IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES, | | ) | |
| | Plaintiff, | ) | No. 04 CR 433-14 |
| vs. | | ) | |
| | | ) | Judge Gary Feinerman |
| LUIS COLIN | | ) | |
| | Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

NOW COMES the defendant Luis Colin, by his attorney John M. Beal, and for his Sentencing Memorandum states as follows:

### I. Objection to the Presentence Report

Mr. Colin has no objections to the guideline calculations in the Presentence Report.

### II. Defendant's History and Characteristics.

To elaborate on the Presentence Report, Mr. Colin is the son of a successful Mexican physician and surgeon. After completing five semesters of college, wanderlust caused him to move to California where he worked for a couple of years and lived with friends of his family. He then had a relapse in the challenge he faced with substance abuse, something with which his father also has had to deal, and he returned to Mexico where he enrolled in a well established clinic for the treatment of alcoholism and drug abuse named Monte Fenix. The course of treatment this time was successful and Mr. Colin has been clean and sober ever since.

He then came to the United States on a visa, spent some time with his

brothers in Texas, and in 2004 moved on to Chicago, where he initially stayed with a God daughter of his parents. He began working at a McDonald's and moved into a small apartment. In a pure coincidence, thru his job at McDonald's he met an uncle who lived in Chicago whom he had never met before. The uncle, co-defendant Alejandro Alvarez, had an ownership interest in a body shop. Mr. Colin began hanging out at the body shop. After a while, Alvarez asked him if he would like to make some extra money, at first without telling him what it was for.

Mr. Colin agreed, and all of Mr. Colin's offense conduct took place over a period of three days, April 23 through April 25, 2004. He delivered packages which he quickly realized contained illegal drugs and picked up money that was payments for the drugs. Mr. Colin was paid approximately $1300 for his participation. After the third day Mr. Colin became very uncomfortable with what he was doing. So he paused in helping his uncle. Then, a week later, another uncle told him that Alvarez had been arrested. Mr. Colin immediately called his father, who told him to take the first plane back to Mexico, which he did.

When he left Chicago Mr. Colin did not know he had been charged with anything. His family in Mexico has never been in communication with the distant uncles in Chicago. In the ensuing years Mr. Colin crossed the border between Mexico and the United States a number of times and boarded commercial airplanes in the United States a number of times, all in his name in the indictment. He was never stopped.

Mr. Colin later moved to California, initially on a visa. As the Presentence Report (¶72) relates, from 2007 to 2018 he was employed by Robert's Waste and Recycling as their book keeper. A laudatory letter from Jesus Roberto, Mr. Colin's employer, is attached as Exhibit One. A letter from Maria Negrete, a co-worker, is attached as Exhibit Two.

Since 2005, Mr. Colin has been in a close relationship with Rogelia Hernandez, with whom he has a son named Jacob, who is now eight years old. Mr. Colin also supported another son of Ms. Hernandez, Mauro Villalovos. Not surprisingly, this case has had a devastating effect on Mr. Colin's family. Attached as Exhibit Three are photographs of the family. And attached as Exhibit Four are recent letters from Jacob, whom Mr. Colin misses beyond description.

While at the Chicago Metropolitan Correctional Center Mr. Colin has earned his GED (copy attached as Exhibit Five). He has also completed numerous courses. Certificates of Completion for eight such courses are attached as Exhibit Six.

Mr. Colin has recently contracted COVID 19 in the MCC. He is recovering now, but it has been a painful process (BOP Health Record attached as Exhibit Seven). In addition, while in the MCC Mr. Colin had two surgeries for varicose veins at a hospital. The surgeries were successful and properly performed. However, the stitches for one operation were removed at a doctor's office in a non-sterile environment. The wound became infected and painful. Another operation

3

had to be performed at the hospital to correct the improper removal of the stitches. Thus, Mr. Colin's time at the MCC has painfully separated him from his family, as well as causing him physical pain from the COVID 19 infection and from the mis-steps in the varicose vein surgery, lingering effects from which persist to this day.

## III. Co-Defendant Sentences.

The sentences for Mr. Colin's co-defendants were imposed by Judge James Zagel. As the Presentence Report states, Mr. Colin was responsible for at least one and less than three kilograms of heroin. He was involved in the offense for three days. He was paid approximately $1300. Mr. Colin has received a minor role reduction because of his very limited involvement.

The Court may take into account the sentences of both cooperating and non-cooperating co-defendants in order to ensure that there are no unwarranted disparities in the sentences. *United States v. Cardena*, 842 F.3d 959, 999-1000 (7th Cr. 2016). Mr. Colin brings to the court's attention the dispositions of the following co-defendants:

1. Miguel Morales, 04 CR 433-10, drug amount: one to three kilograms of heroin, received safety valve, Guideline range of 70 to 87 months, Government recommendation for a within the sentencing guidelines range sentence. Sentence imposed: 18 months incarceration. Co-defendant Morales was involved in the very same three drug transactions as Mr. Colin. Morales' plea agreement states that

4

defendant Morales "obtained one kilogram of heroin from Garcia Gutierrez on three consecutive days: April 23, 24, and 25, 2004....Defendant purchased this heroin from Garcia Gutierrez for purposes of resale to his narcotics customers. Defendant paid Garcia Gutierrez approximately $69,000 per kilogram of heroin." Morales Plea Agreement attached as Exhibit Eight and transcript of Morales sentencing hearing attached as Exhibit Nine.

2.  Miguel Alvarez, 04 CR 433-13, drug amount: .5 to 2 kilograms of cocaine, minor role, and sentencing guidelines range of 37 to 46 months. The government filed and defendant Alvarez pleaded guilty to a superseding information which charged 18 U.S.C. §843(b), a phone count. That new charge set a four year statutory maximum but did not change the sentencing guideline range. The government recommended a within the guidelines range sentence. Sentence imposed: six months incarceration. Alvarez Plea Agreement attached as Exhibit Ten.

3.  Andres Garcia Gutierrez, 04 CR 433-1, drug amounts: 20 kilograms of cocaine and 3 kilograms of heroin, leadership enhancement, weapon enhancement, initial guideline range of 235-293 months, and an addendum to the plea agreement was filed invoking 5K1.1 and setting a term of incarceration at 140 months under Rule 11(c)(1)(C). Sentence imposed: 140 months incarceration. Garcia Gutierrez's plea agreement states, "GARCIA GUTIERREZ lead a Chicago-based narcotics distribution cell which sold multi-kilogram quantities of cocaine

and heroin to customers on the Northwest Side of Chicago. GARCIA GUTIERREZ obtained cocaine and heroin from Alejandro Alvarez with the intention of re-selling the cocaine and heroin to GARCIA GUTIERREZ's whole sale customers, who included...Miguel Morales... " Garcia Gutierrez Plea Agreement, 04 CR 433-1, Rec. Doc. #340. Garcia Gutierrez's sentence demonstrates that Judge Zagel was prepared to impose a substantial sentence when warranted, even when a defendant like Garcia Gutierrez cooperated.

On the other hand, co-defendants Miguel Morales and Miguel Alvarez were both similar to Mr. Colin. They were involved in a limited number of transactions for a limited period of time. Their sentences show that Judge Zagel recognized that much lower sentences were appropriate for defendants with much more limited involvements, which also describes Mr. Colin.

## III. Section 3553(a) Factors

### A. The Law

a.  Not all §3553(a) factors are equal. Only the §3553(a)(2) factors have the statutory requirement that the sentence be sufficient, but not greater than necessary, to accomplish them. The portions of §3553(a) other than those contained in subparagraph 2 need only be "considered." A closer look at the §3553(a)(2) factors also reveals that they are underlain by the four traditional "goals of penal sanctions that have been recognized as legitimate - retribution, deterrence,

6

incapacitation, and rehabilitation." *Graham v. Florida*, 560 U.S. 48, 71, 130 S.Ct. 2011, 2028 (2010). The Supreme Court has further stated, "A sentence lacking any legitimate penological justification is by its nature disproportionate to the offense." *Id.* Consequently, Mr. Jones will focus on the application of retribution, deterrence, and incapacitation to his sentence, considering that rehabilitation cannot support increased incarceration. *Tapia v. United States*, 564 U.S. 319 (2011). Finally, §3553(a)(6), which requires avoiding unwarranted sentencing disparities among similar defendants, is an important consideration in this case.

b.   Deterrence. Deterrence is both specific and general. Mr. Colin's 33 months in the MCC have surely provided as much specific deterrence as can be achieved by incarceration. With respect to general deterrence, the prosecutions and sentences that took place soon after the offense are the ones that would have effected general deterrence. Any sentence now may send a message that they law can always catch up with you, but the length of the sentence will not have a significant bearing on that message.

c.   Incapacitation. This offense is an aberrational episode in Mr. Colin's life. Mr. Colin has no criminal history and there is no reason to expect that he will commit future crimes from which society needs to

be protected.  Therefore, incapacitation does not provide support for further incarceration.

d.  Rehabilitation.  Rehabilitation, of course, cannot be used to justify incarceration.  *Tapia v. United States*, 564 U.S. 310 (2011).  That said, Mr. Colin's constructive activities in the MCC, including obtaining his GED and taking numerous courses, demonstrate that he can be expected to have a productive future.

e.  Retribution.  The final purpose of punishment recognized by the Supreme Court is retribution.  Section 3553(a)(2)(A) reads, "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  But *Farmer* and other Supreme Court cases make clear that this is actually the sentencing purpose of retribution.  As the Supreme Court states in *Farmer*, it is "the heart of the retribution rational that a criminal sentence must be directly related to the personal culpability of the criminal offender."  *Farmer*, 560 U.S. at 71.

As a result of this case, the lives of Mr. Colin and his family have been turned upside down because of the ill-advised activity in which he engaged in 2004.  The disposition of his case has been delayed due to COVID-19.  Mr. Colin has by now been sufficiently punished for his conduct in this case.  There is no retributive

8

justification for incarcerating Mr. Colin for more than the 33 months that he has already served in the MCC.

**B.      Application of §3553(a)(2) and §3553(a)(6) Factors**

It is difficult to articulate a legitimate penological goal that would be served by a sentence of additional incarceration.  Consequently, in the language of §3553(a), any sentence of additional incarceration would be greater than necessary to comply with the purposes of §3553(a)(2).  Similarly, comparing Mr. Colin to the sentences of similarly situated co-defendants Miguel Morales and Miguel Alvarez, any sentence of incarceration beyond that which Mr. Colin has already served would create an unwarranted disparity with the sentences of those co-defendants.

WHEREFORE, defendant Luis Colin asks this Court to impose a  sentence of time served on the grounds that a greater sentence of incarceration would be greater than necessary to comply with the purposes of 18 U.S.C. §§3553(a)(2) and (a)(6).

Respectfully submitted,

___S/ John M. Beal_____
Attorney for Defendant

John M. Beal
Attorney at Law
53 W Jackson Blvd., Suite 1615
Chicago, IL 60604
(312) 408-2766

9

## CERTIFICATE OF SERVICE

I, John M. Beal, attorney, certify that I caused a copy of the above **DEFENDANT'S SENTENCING MEMORANDUM** to be served on December 19, 2020, in accordance with Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

Executed on December 19, 2020

__S/ John M. Beal_____
John M. Beal